**UNITED STATES  DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**MARCUS WILLIAMS**                                      **CIVIL ACTION**

**versus**                                                         **NO. 12-1162**

**BURL CAIN**                                                  **SECTION: "E" (1)**

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

Petitioner, Marcus Williams, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana.  On June 20, 2006, he was convicted of armed robbery and aggravated kidnapping under Louisiana law.[1]  On August 4, 2006, he was sentenced to a term of seventy-five years imprisonment on the armed robbery conviction and to a term of life imprisonment

_____

[1] State Rec., Vol. III of VI, transcript of June 20, 2006, p. 95; State Rec., Vol. I of VI, minute entry date June 20, 2006.

on the aggravated kidnapping conviction. It was ordered that those sentences be served concurrently and without benefit of parole, probation, or suspension of sentence.[2] On December 16, 2008, the Louisiana Fifth Circuit Court of Appeal affirmed those convictions and sentences.[3] The Louisiana Supreme Court then denied petitioner's related writ application on October 16, 2009.[4]

On October 12, 2010, petitioner, through counsel, filed an application for post-conviction relief with the state district court.[5] That application was denied on May 23, 2011.[6] His related writ applications were then likewise denied by the Louisiana Fifth Circuit Court of Appeal on July 29, 2011,[7] and by the Louisiana Supreme Court on March 23, 2012.[8]

On May 2, 2012, petitioner filed the instant federal application for *habeas corpus* relief.[9] The state concedes that the federal application is timely.[10]

---

[2] State Rec., Vol. III of VI, transcript of August 4, 2006; State Rec., Vol. I of VI, minute entry dated August 4, 2006.

[3] State v. Williams, 3 So.3d 526 (La. App. 5th Cir. 2008) (No. 08-KA-272); State Rec., Vol. I of VI.

[4] State v. Williams, 19 So.3d 470 (La. 2009) (No. 2009-KO-0143); State Rec., Vol. I of VI.

[5] State Rec., Vol. I of VI.

[6] State Rec., Vol. II of VI, Order dated May 23, 2011.

[7] State v. Williams, No. 11-KH-701 (La. App. 5th Cir. July 29, 2011); State Rec., Vol. II of VI.

[8] State v. Williams, 85 So.3d 87 (La. 2012) (No. 2011-KP-1877); State Rec., Vol. II of VI.

[9] Rec. Doc. 4.

[10] Rec. Doc. 14, p. 3.

I.  Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both.  The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary

to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>, 535

U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals

has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

<u>Wooten v. Thaler</u>, 598 F.3d 215, 218 (5th Cir.) (internal quotation marks, ellipses, brackets, and

footnotes omitted), <u>cert. denied</u>, 131 S.Ct. 294 (2010).

Regarding the "unreasonable application" clause, the United States Supreme Court

has explained:

> [A] state-court decision can involve an "unreasonable application" of this Court's clearly established precedent in two ways. First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case. Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

<u>Williams v. Taylor</u>, 529 U.S. 362, 407 (2000). The Supreme Court has noted that the focus of this

inquiry "is on whether the state court's application of clearly established federal law is objectively

unreasonable, and we stressed in <u>Williams</u> that an unreasonable application is different from an

incorrect one."  Bell, 535 U.S. at 694; see also Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011)

("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application

of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."),

cert. denied, 132 S.Ct. 1537 (2012).

      While the AEDPA standards of review are strict and narrow, they are purposely so.

As the United States Supreme Court recently held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
>       If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is *no possibility* fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal.  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 131 S.Ct. 770, 786-87 (2011) (citations omitted; emphasis added).

## II.  Facts

      On direct appeal, the Louisiana Fifth Circuit Court of Appeal summarized the facts

of this case as follows:

>       The victim, Owen Santiago, testified that two years earlier, on April 14, [2004,] as he drove his car into his driveway, four men entered his car, three of whom were armed.  The men wanted money and took his jewelry.  One of the kidnappers, later identified as the defendant, told him that he would be released if he had an ATM card

or could call someone to give them money. Santiago thought he was going to die. He knew one of the people who grabbed him, Marcus, because he had gone to school with him. The kidnappers took his earrings, chain, and bracelet. The kidnappers took Santiago out of his car and threatened to beat him if he did not cooperate. One of them said they would kill him and put his body in a dumpster. The kidnappers took the spare tire out of the trunk, put Santiago inside, and resumed driving.

The victim struggled to escape the trunk. As the car turned on the service road near Clearview, the victim was able to jump out. He ran to a nearby service station to call the police. Santiago described the routes taken during the kidnapping. Upon retracing these locations, the police recovered the spare tire where it had been discarded, as well as the victim's shoes which had been lost as he jumped from the trunk.

At trial, the victim positively identified the defendant as the man who had been in the front passenger seat of his car. He had gone to grammar and high school with him and knew the defendant "pretty good." The victim was absolutely positive that Marcus Williams was one of the men in the car.[11]

### III. Petitioner's Claims

### A. Sufficiency of the Evidence

Petitioner's first claim is that the evidence was insufficient to support his conviction.

On direct appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> [D]efendant argues the evidence submitted at trial was insufficient to prove he committed the crime with which he was charged beyond a reasonable doubt.
>
> In reviewing claims challenging the sufficiency of the evidence or identification, an appellate court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

---

[11] Williams, 3 So.3d at 528-29; State Rec., Vol. I of VI.

In addition to proving each statutory element of the crime charged, the State must prove the identity of the perpetrator. State v. Vasquez, 98-898 (La.App. 5 Cir. 2/10/99), 729 So.2d 65, 69. Where the key issue is identification, the State is required to negate any reasonable probability of misidentification in order to carry its burden of proof. Id.

"Positive identification by only one witness is sufficient to support a conviction." State v. Williams, 02-645 (La.App. 5 Cir. 11/26/02), 833 So.2d 497, 503, writ denied, 02–3182 (La. 4/25/03), 842 So.2d 398. All evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Jupiter, 06-93, p. 6 (La.App. 5 Cir. 6/28/06), 934 So.2d 884, 888. The determination of the weight of evidence is a question of fact that rests solely with the trier-of-fact. State v. Upchurch, 00-1290, p. 4 (La.App. 5 Cir. 1/30/01), 783 So.2d 398, 402. If there is a conflict in the testimony, the trier-of-fact may accept or reject, in whole or in part, the testimony of any witness. State v. Addison, 00-1730, p. 4 (La.App. 5 Cir. 5/16/01), 788 So.2d 608, 613, writ denied, 01-1660 (La. 4/26/02), 814 So.2d 549. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier-of-fact, is sufficient to convict. Id.

These principles are illustrated in State v. Cowart, 01-1178 (La.App. 5 Cir. 3/26/02), 815 So.2d 275, writ denied, 02-1457 (La. 5/9/03), 843 So.2d 387. In Cowart, there was no physical evidence linking the defendant to the crime and a single witness identified the defendant as the perpetrator of a shooting. At trial, the reliability of the eyewitness was attacked because the witness was a convicted felon, had been under psychiatric care, had initially lied to the police, gave a description that did not match the defendant, had perjured herself during motion hearings, and had changed her story about the crime scene and the number of shots she heard. Despite this lengthy list of deficiencies, this Court held that it was within the jury's discretion to believe the witness' testimony. Id. at 285.

In this case, the jury heard testimony from the victim, who knew the defendant from attending school with him. Over the course of several hours, the victim had an opportunity to see and hear the perpetrators. He made positive and consistent identifications that this defendant was one of the men who robbed and kidnapped him. If believed by the jury, this testimony was sufficient to prove identity. Under the Jackson standard, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have

concluded that the defendant was guilty of armed robbery and aggravated kidnapping. For these reasons, we find the evidence provided at trial was sufficient to support defendant's convictions.[12]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[13]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting petitioner's claim unless he shows that the decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). For the following reasons, the Court finds that petitioner has made no such showing.

As correctly noted by the state court, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979), which held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.'" Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added). Moreover, Louisiana's

---

[12] Williams, 3 So.3d at 529-30; State Rec., Vol. I of VI.

[13] State v. Williams, 19 So.3d 470 (La. 2009) (No. 2009-KO-0143); State Rec., Vol. I of VI.

circumstantial evidence standard requiring that the every reasonable hypothesis of innocence be excluded does *not* apply in federal *habeas corpus* proceedings; in these proceedings, *only* the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof. Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 Fed. App'x 405 (5th Cir. 2011), cert. denied, 132 S.Ct. 1713 (2012); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 Fed. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 Fed. App'x 549 (5th Cir. Apr. 9, 2010).

In the instant case, there is no question that the elements of the crimes were established; rather, petitioner disputes only the sufficiency of the evidence concerning his identification as the perpetrator. However, as noted by the state court, petitioner was identified as the perpetrator by the victim. Under both federal and Louisiana law, the testimony of a single eyewitness is generally sufficient to support a conviction. See United States v. King, 703 F.2d 119, 125 (5th Cir. 1983); State v. Neal, 796 So.2d 649, 658 (La. 2001); see also White v. Cain, Civ Action No. 05-3667, 2007 WL 3270770, at *10 (E.D. La. Nov. 2, 2007).

To the extent that petitioner is contending that the identification was unreliable, that contention clearly has no merit. This is not a case in which the witness's identification is based on a brief encounter with a stranger; on the contrary, the victim *knew* petitioner because they had attended school together. Where, as here, the witness recognized the perpetrator as someone he

already knew, there simply is no "substantial likelihood of irreparable misidentification." See United States v. Hefferon, 314 F.3d 211, 219 (5th Cir. 2002); United States v. Buckhalter, 986 F.2d 875, 878 (5th Cir. 1993); Phillips v. Cain, Civ. Action No. 11-2725, 2012 WL 2564926, at *14 (E.D. La. Apr. 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Sholes v. Cain, Civ. Action No. 06-1831, 2008 WL 2346151, at *16 (E.D. La. June 6, 2008), aff'd, 370 Fed. App'x 531 (5th Cir.), cert. denied, 131 S. Ct. 292 (2010).

Further, to the extent that petitioner is contending that the identification was not credible, that was an issue for the jury, not a federal *habeas* court. Where a petitioner's insufficient evidence claim is based on the credibility of a witness, a federal *habeas* court generally will not grant relief. See Schlup v. Delo, 513 U.S. 298, 330 (1995) ("[U]nder Jackson [v. Virginia, 443 U.S. 307 (1979)], the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93-5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips, 2012 WL 2564926, at *14; Picou v. Cain, Civ. Action No. 06-6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

For the reasons noted by the state court, the evidence presented in the instant case, including the victim's testimony, viewed in the light most favorable to the prosecution, was clearly sufficient for any rational trier of fact to find petitioner guilty beyond a reasonable doubt. Therefore, he cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court

of the United States.  Accordingly, this Court should defer to the state court's decision rejecting that

claim.

### B.  Unduly Suggestive Identification Procedure

Petitioner next claims that his identification resulted from an unduly suggestive

identification procedure.  With respect to such claims, the United States Fifth Circuit Court of

Appeals has noted:

> [T]he admissibility of identification evidence is governed by a two-
> step analysis.  Initially, a determination must be made as to whether
> the identification procedure was impermissibly suggestive.  Next, the
> court must determine whether, under the totality of the circumstances,
> the suggestiveness leads to a substantial likelihood of irreparable
> misidentification.

Herrera v. Collins, 904 F.2d 944, 946 (5th Cir. 1990) (footnote omitted).  As to the second step of

the analysis, the Fifth Circuit has offered the following guidance:

> In Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53
> L.Ed.2d 140 (1977), the Supreme Court indicated that "reliability is
> the linchpin" when examining the totality of the circumstances to
> "determin[e] the admissibility of identification testimony."  Id. at
> 114, 97 S.Ct. at 2253.    Even an impermissibly suggestive
> identification procedure does not violate due process so long as the
> identification possesses sufficient aspects of reliability. The Supreme
> Court has set forth several factors to be considered when reviewing
> the reliability of a pre-trial identification.  These factors include
>
> > (1) the opportunity of the witness to view the
> > criminal, (2) the witness's degree of attention, (3) the
> > accuracy of the description, (4) the witness's level of
> > certainty, (5) the elapsed time between the crime and
> > the identification, and (6) the corrupting influence of
> > the suggestive identification itself.

Herrera, 904 F.2d at 947.

A claim that identification testimony was unconstitutionally admitted at trial presents a mixed question of law and fact.  Id. at 947 n.3.  Therefore, this Court must defer to the state court unless the petitioner shows that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  For the following reasons, the Court finds that petitioner has made no such showing in this case.

On direct appeal, the Louisiana Fifth Circuit Court of Appeal rejected petitioner's claim, holding:

> [D]efendant argues the trial court erred in not granting his Motion to Suppress the Identification because the photographic lineup was improperly suggestive.
>
> The defendant argues in his appellate brief that the lineup photo array is not included in exhibits and thus not reviewable by this Court.  This factual contention is contradicted by a review of the district court record prepared for appeal.  This exhibit is present in the record on appeal and is reviewable by this Court.
>
> At the motion to suppress hearing, Detective Keith Forsythe testified regarding the selection of photographs and manner in which they were presented to the victim.  He did not consider the photographs suggestive and noted that the six photographs in the array were all of black males with dreadlocks, around the same age, with thin mustaches.  Forsythe testified that he utilized the automated fingerprint identification system (AFIS) by entering physical descriptions that resembled the suspect.  The defendant's picture was already in the AFIS system when the photo array was compiled.  Forsythe informed the victim that it was possible that a suspect might not be in one of the photographs.
>
> After hearing testimony from both the investigating detective and the victim and viewing the photographic lineup, the trial court denied the motion to suppress the identification.
>
> A trial judge's finding of fact in ruling on a motion to suppress identification is afforded great deference and may not be overturned in the absence of manifest error.  State v. Higgins, 03-

1980, pp. 20-21 (La. 4/1/05), 898 So.2d 1219, 1233, <u>cert. denied</u>, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).

In raising a challenge to identification procedures, the burden of proof is on the defendant to establish that the identification was suggestive and that there was a substantial likelihood of misidentification. <u>State v. Calloway</u>, 97-796, p. 10 (La.App. 5 Cir. 8/25/98), 718 So.2d 559, 565, <u>writs denied</u>, 98-2435 and 98-2438 (La. 1/8/99), 734 So.2d 1229. The admissibility of an identification is controlled by <u>Manson v. Brathwaite</u>, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977). Under this standard, viewing the evidence from a totality of the circumstances, the trial court should consider whether suggestiveness presents a substantial likelihood of misidentification. This review is based on five specific factors:

> 1) the opportunity of the witness to observe the perpetrator at the time of the crime,

> 2) the witness' degree of attention at the time of the crime,

> 3) the accuracy of his prior description of the offender,

> 4) the level of certainty displaced at the confrontation, and lastly,

> 5) the time between the crime and the confrontation.

<u>Id</u>. at 115, 97 S.Ct. at 2253.

The victim and witness in this case had a lengthy opportunity to view the perpetrators of the crime. His degree of attention was heightened, his description of the offender was accurate, he was certain of his identification, both in selecting the defendant's photograph and in identifying him in court, and the time between the crime and the identification was short. Thus, all of the factors set forth in <u>Manson v. Brathwaite</u> were present.

The defendant's short argument related to the lineup is bolstered solely by reference to defense counsel's questions of the police officer at the motion to suppress hearing. The defendant directs this Court's attention to counsel's question of the police officer as to whether the defendant's lineup photograph was larger than other photographs. The officer's response was that the

photograph was not bigger than the other photographs. At the conclusion of the trial, the jury was specifically instructed that statements and arguments of counsel were not evidence.

We have reviewed the photographic lineup which is contained in the record on appeal and is viewable by the Court. We find the defendant's photograph in the lineup was not larger than the other photographs, as argued by defendant. However, we do note that defendant's face does appear slightly larger in his photograph than the others' faces. However, we find this slight difference did not present a substantial likelihood of misidentification and, using the factors set forth in <u>Manson v. Brathwaite</u>, *supra*, the victim's identification of defendant was reliable. Therefore, we find the trial court correctly denied the motion to suppress.[14]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning reasons.[15]

This Court finds that petitioner's claim fails on both prongs of the applicable analysis. As to the first prong, the record reflects that the identification procedure used was not unduly suggestive. The testimony at the suppression hearing showed that the photographic line-up was conducted in a neutral manner and that there was no suggestion that the victim should select petitioner's photograph.[16] To the extent that petitioner contends that the six subjects in the photographs do not resemble one another sufficiently, this Court, having reviewed the photo array,[17] flatly rejects that contention. The subjects are all African American males who appear to be of approximately the same age, have similar facial features, and have the same basic hairstyle.

---

[14] <u>Williams</u>, 3 So.3d at 530-31; State Rec., Vol. I of VI.

[15] <u>State v. Williams</u>, 19 So.3d 470 (La. 2009) (No. 2009-KO-0143); State Rec., Vol. I of VI.

[16] State Rec., Vol. III of VI, transcript of June 20, 2006.

[17] The photo array is included in Volume VI of the state court record.

Contrary to petitioner's suggestions, nothing about petitioner's appearance in his photograph is noticeably different from the appearances of the other subjects. Moreover, while the subjects are not identical, they are not required to be. "The due process clause does not require law enforcement officers to scour about for a selection of photographs so similar in their subject matter and composition as to make subconscious influences on witnesses an objective impossibility." United States v. Bubar, 567 F.2d 192, 199 (2nd Cir. 1977).

Further, the photographs are similar in other respects. All are in color and have similarly plain backgrounds. While petitioner is correct in noting that, although the photographs were of the same size, his face appears slightly larger than the others, that difference is negligible. Because the variation is so slight, this Court rejects petitioner's contention that this fact rendered the photo array impermissibly suggestive. See Tipton v. Carlton, 306 Fed. App'x 213, 220 (6th Cir. 2008); United States v. Storer, No. 91-30103, 1992 WL 45764, at *1 (9th Cir. Mar. 4, 1992); Tinajero v. Small, No. CV 10-807, 2011 WL 7563040, at *3-4 (C.D. Cal. Aug. 26, 2011), adopted, 2012 WL 952345 (C.D. Cal. Mar. 19, 2012); Bones v. Superintendent, Groveland Correctional Facility, 2011 WL 1792779, at *6-7 (W.D.N.Y. May 6, 2011); Smith v. West, 640 F. Supp. 2d 222, 239 (W.D.N.Y. Aug. 7, 2009).

Simply put: viewing the array as a whole, petitioner's photograph was not so different from the others as to suggest his culpability. For this reason, his claim clearly fails at the first prong of the analysis. "If the identification procedure is not impermissibly suggestive, *the inquiry ends*." Livingston v. Johnson, 107 F.3d 297, 309 (5th Cir. 1997) (emphasis added); see also United States v. Dailey, 208 Fed. App'x 344, 345 (5th Cir. 2006).

Nevertheless, out of an abundance of caution, the Court notes that petitioner's claim would also fail at the second prong of the analysis. As previously explained, where, as here, the witness in question *recognized* the perpetrator as someone he *already knew*, there simply is no "substantial likelihood of irreparable misidentification." See United States v. Hefferon, 314 F.3d 211, 219 (5th Cir. 2002); United States v. Buckhalter, 986 F.2d 875, 878 (5th Cir. 1993); Sholes v. Cain, Civ. Action No. 06-1831, 2008 WL 2346151, at *16 (E.D. La. June 6, 2008), aff'd, 370 Fed. App'x 531 (5th Cir.), cert. denied, 131 S.Ct. 292 (2010).

Accordingly, petitioner's claim has no merit and should be denied.

## C. Ineffective Assistance of Counsel

Petitioner also claims that he received ineffective assistance of counsel. The United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 697 (1984). Petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

To prevail on the deficiency prong of the Strickland test, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth

Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

        The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel.  In order to prove prejudice with respect to *trial* counsel, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.  On the other hand, to prove prejudice with respect to a claim that *appellate* counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins,

528 U.S. 259, 286 (2000).  Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error.  <u>Briseno</u>, 274 F.3d at 210.

Petitioner's ineffective assistance of counsel claims were rejected by the state courts in the post-conviction proceedings.  Because such a claim is a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claims unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); <u>Moore v. Cockrell</u>, 313 F.3d 880, 881 (5th Cir. 2002).  Moreover, the United States Supreme Court recently explained that, under the AEDPA, federal *habeas corpus* review of ineffective assistance of counsel claims is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the <u>Strickland</u> standard was unreasonable.  This is different from asking whether defense counsel's performance fell below <u>Strickland</u>'s standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court.   Under AEDPA, though, it is a necessary premise that the two questions are different.  For purposes of § 2254(d)(1), an *unreasonable* application of federal law is different from an *incorrect* application of federal law.  A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.  <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004).  And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's

specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid.  "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 131 S.Ct. 770, 785-86 (2011) (citation omitted).  The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task.  An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.  Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.  Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms,  not whether it deviated from best practices or most common custom.
>
> Establishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult.  *The standards created by* Strickland *and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.*  The Strickland standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d).  *When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied* Strickland's *deferential standard.*

Id. at 788 (citations omitted; emphasis added).  For the following reasons, the Court finds that, under these stringently deferential standards, it simply cannot be said that relief is warranted in the instant case with respect to petitioner's ineffective assistance of counsel claims.

### (1) Trial Counsel

With respect to his trial counsel, petitioner claims that counsel was ineffective for failing to impeach Owen Santiago and Officer Glapion.  The state district court rejected this claim, holding:

> [P]etitioner claims ineffective assistance of counsel when trial counsel failed to impeach witnesses, including the victim and Officer Glapion, with inconsistent statements.  Certainly, the petitioner has a Sixth Amendment right to effective counsel.  Counsel's performance will again be evaluated under the well-known test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
>
> There is a strong presumption that counsel's performance is within the wide range of effective representation.  Effective counsel does not mean errorless counsel and the reviewing court does not judge counsel's performance based on hindsight, but rather determines whether counsel was reasonably likely to render effective assistance.  State v. Soler, 93-1042 (La.App. 5 Cir. 4/26/94), 636 So.2d 1069, 1075.
>
> In a case with similar complaints of trial performance, the Supreme Court of Louisiana rejected a claim of ineffective assistance, noting as follows:
>
>> Further, failure of trial counsel to adequately question alibi witnesses, properly investigate the case, make an opening statement, have defendant take the stand, request particular special charges, and object to certain questions asked of witnesses at trial are all claimed to clearly show that defendant was not adequately and effectively represented at the trial.  We do not agree.  These charges are either leveled at decisions made by counsel during the heat of trial, the correctness of which cannot be determined by

> hindsight, or the validity of which is not evident from the record.

> State v. Strahan, 325 So.2d 231 (La. 12/8/1975).

> As in Strahan, counsel's decisions made during the trial in this case are clearly strategic. Trial strategy is not deficient unless it is outside of the wide range of professionally competent assistance. Strickland, 466 U.S. at 689-690, 104 S.Ct. at 2065-2066.

> In this case, the petitioner fails to carry his burden of proving ineffective assistance of counsel. He fails to provide specific examples or citations of the alleged inconsistencies. Additionally, as the State contends, his claims are incorrect, as his trial counsel conducted a very thorough cross-examination of the victim. Petitioner's argument goes to trial strategy. Petitioner fails to meet either prong of Strickland, as he does not prove deficient performance, and shows no prejudice. At trial, the State presented overwhelming evidence of the petitioner's guilt. The victim was familiar with the defendant, as they attended the same highschool, and he positively identified him as the perpetrator of the crime. The petitioner has not met his burden of proving ineffective assistance of counsel, and this claim will be denied.[18]

His related writ applications were then likewise denied without additional reasons assigned by the Louisiana Fifth Circuit Court of Appeal[19] and the Louisiana Supreme Court.[20]

It is clear that "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." Ford v. Cockrell, 315 F. Supp. 2d 831, 859 (W.D. Tex. 2004), aff'd, 135 Fed. App'x 769 (5th Cir. 2005); see also Lewis v. Cain, Civ. Action No. 09-2848, 2009 WL 3367055, at *8

---

[18] State Rec., Vol. II of VI, Order dated May 23, 2011, p. 2.

[19] State v. Williams, No. 11-KH-701 (La. App. 5th Cir. July 29, 2011); State Rec., Vol. II of VI.

[20] State v. Williams, 85 So.3d 87 (La. 2012) (No. 2011-KP-1877); State Rec., Vol. II of VI.

(E.D. La. Oct. 16, 2009), aff'd, 444 Fed. App'x 835 (5th Cir. 2011); Williams v. Cain, Civ. Action

Nos. 06-0224 and 06-0344, 2009 WL 1269282, at *11 (E.D. La. May 7, 2009), aff'd, 359 Fed.

App'x 462 (5th Cir. 2009); Packnett v. Cain, Civ. Action No. 06-5973, 2008 WL 148486, at *11

(E.D. La. Jan. 10, 2008); Parker v. Cain, 445 F. Supp. 2d 685, 710 (E.D. La. 2006). The United

States Supreme Court has cautioned courts not to second-guess counsel's decisions on such tactical

matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption

that counsel's conduct falls within a wide range of reasonable assistance and, under the

circumstances, might be considered sound trial strategy. Strickland, 466 U.S. at 689. Moreover,

it is irrelevant that another attorney might have made other choices or handled such issues

differently. As the Supreme Court noted: "There are countless ways to provide effective assistance

in any given case. Even the best criminal defense attorneys would not defend a particular client in

the same way." Id.

 In the instant case, defense counsel in fact vigorously cross-examined both Santiago

and Glapion. Moreover, for the following reasons, it is clear that the questions petitioner faults

counsel for failing to ask either were in fact asked or were of little importance.

 Petitioner first claims that counsel should have questioned Santiago concerning the

fact that he recognized petitioner from school but yet he failed to identify him by name during the

investigation. However, that fact was in fact covered at trial,[21] and so there was little or nothing to

---

[21] State Rec., Vol. III of VI, transcript of June 20, 2006, p. 4 ("I had not told [the police officer] the name when I was at the police station. He started showing me some pictures to see if I could identify him.").

gain by revisiting the issue with additional questioning. The point had already been made and was therefore available to be used in argument.

Petitioner next claims that counsel should have questioned Santiago concerning the fact that he stated that the assailants were wearing rags across their faces while also stating that one of them had gold teeth. This contention has no merit for two reasons. First, petitioner falsely claims that Santiago testified that "all" of the assailants had rags covering their faces. That is untrue; he testified that "some" of the assailants had their faces covered.[22] Second, in any event, defense counsel in fact questioned Santiago both about the fact that his statement to the police did not mention the rags at all and the fact that he said one of the assailants had gold teeth.[23] Therefore, not only were there no actual inconsistencies, but Santiago was expressly cross-examined about the perceived inconsistencies.

As to Glapion, at trial he testified that he observed a group of *four* men, i.e. Randen Riggins, petitioner, James Converse, and an unknown black male; however, in his police report he stated that Riggins and petitioner were observed with *one or two* other men. Petitioner has not furnished a copy of the police report, and so this Court cannot verify that the purported "inconsistency" even existed. In any event, even if it did, the "inconsistency" was minor in that the police report also indicated that there were perhaps four individuals. Moreover, this is much ado about nothing, in that the verdict in this case resulted from the victim's compelling testimony and

---

[22]    State Rec., Vol. III of VI, transcript of June 20, 2006, p. 8 ("I can remember some of them had rags across like the bottom of the face, and him, he had a hat on.").

[23]    State Rec., Vol. III of VI, transcript of June 20, 2006, pp. 8-10.

his ironclad, unwavering identification of his former schoolmate at the perpetrator. Therefore, even if counsel could properly be faulted for failing to explore this "inconsistency," petitioner's claim still fails because he cannot show that he was prejudiced. In light of Santiago's testimony, there is simply no reasonable probability that the result of this proceeding would have been different even if Glapion had been more vigorously cross-examined.

In light of the foregoing, the undersigned finds that petitioner has failed to show that the state court's decision rejecting this ineffective assistance claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Accordingly, under the doubly deferential standards of review mandated by the AEDPA, this Court should likewise deny the claim.

<u>(2) Appellate Counsel</u>

Petitioner also claims that his appellate counsel was ineffective for failing to assert a claim concerning allegedly improper comments made by the prosecutor during trial. Specifically, petitioner points to the prosecutor's following five comments during closing argument:

> I don't buy that you can't find a second cousin. They got them – that I hate. I can't stand a couple of my second cousins, or third cousins. They always turn up like bad – okay. And there's no way that somebody in your family doesn't know anything about these people. Forget the hurricane. I can't lose some of my family members. I can't. And I'm going to tell you something, for two years he's been waiting to go to trial, and you know dog gone well that if Jamal Price were called to the stand, I bet you he wouldn't say that, what he just said on the stand. I can bet you that.[24]

---

[24] State Rec., Vol. III of VI, transcript of June 20, 2006, p. 64.

[Petitioner] didn't want to [call Officer Glapion a liar]. He was mistaken. Did y'all think that police officer was mistaken about who he saw? I don't think so. I don't think he thought he was mistaken.[25]

I mean, you've got to put yourself in that situation, if you ever get grabbed, what it's like.[26]

You don't have to like [the victim]. I told you that before. What you have to dislike more than the person is the crime. You have to dislike the crime more than you dislike the person. Because that could have been anybody that got grabbed up off that street, anybody. It could have been – it could have been anything.[27]

Don't be sucked in to what [petitioner] wants. You know he did it.[28]

The state argues that this claim is unexhausted because it was raised in a different context in the state post-conviction proceedings and is therefore now procedurally defaulted.[29] However, this Court need not reach those issues, because petitioner's claim clearly fails on the merits for the following reasons.[30]

---

[25] State Rec., Vol. III of VI, transcript of June 20, 2006, p. 66.

[26] State Rec., Vol. III of VI, transcript of June 20, 2006, p. 67.

[27] State Rec., Vol. III of VI, transcript of June 20, 2006, p. 79.

[28] State Rec., Vol. III of VI, transcript of June 20, 2006, p. 79.

[29] Rec. Doc. 14, pp. 21-22.

[30] A federal court has the authority to deny *habeas* claims on the merits, regardless of whether the petitioner exhausted his state court remedies and whether exhaustion is waived by the state. 28 U.S.C. § 2254(b)(2); Jones v. Jones, 163 F.3d 285, 299 (5th Cir. 1998); Woods v. Cain, Civ. Action No. 06-2032, 2008 WL 2067002, at *8 n. 8 (E.D. La. May 13, 2008). Moreover, a federal *habeas* court need not determine whether a claim is procedurally barred when the claim clearly fails on the merits. See Glover v. Hargett, 56 F.3d 682, 684 (5th Cir. 1995); Wiley v. Puckett, 969 F.2d 86, 104 (5th Cir. 1992); Williams v. Cain, Civ. Action No. 11-1777, 2012 WL 253109, at *2 (E.D. La. Jan. 3, 2012), adopted, 2012 WL 253063 (E.D. La. Jan. 26, 2012); Corzo v. Murphy, Civ. Action No. 07-7409, 2008 WL 3347394, at * 1 n. 5 (E.D. La. July 30, 2008).

If appellate counsel had raised a claim challenging the prosecutor's comments, that claim clearly would have been rejected based on the fact that trial counsel did not lodge a contemporaneous objection to the prosecutor's comments at trial. La.C.Cr.P. art. 841(A); see, e.g., State v. Williams, 69 So.3d 556, 558-60 (La. App. 2nd Cir.), writ denied, 76 So.3d 1200 (La. 2011); State v. Akins, 687 So.2d 489, 493 (La. App. 3rd Cir. 1996). As a result, petitioner cannot show a reasonable probability that he would have prevailed on appeal if appellate counsel had raised this issue. Therefore, he cannot show the prejudice required to support his claim. See Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 285 (2000); Weatherspoon v. Cain, Civ. Action No. 10-4500, 2011 WL 4351397, at *34 (E.D. La. July 8, 2011), adopted, 2011 WL 4063611 (E.D. La. Sept. 13, 2011).

Further, even if the Court of Appeal elected to review the claim despite the absence of a contemporaneous objection, there is no reasonable probability that the claim would have been deemed meritorious. The Louisiana Supreme Court has set a very high threshold for the granting of relief on such claims, holding:

> This Court has stated, as a general matter, that a prosecutor retains considerable latitude in making closing arguments. Even when we have found that a prosecutor has exceeded that latitude, the Court has often criticized the improper arguments without finding that they constitute reversible error. Specifically, this Court will not overturn a guilty verdict on the basis of improper argument unless we are firmly convinced that the jury was influenced by the remarks and that they contributed to the verdict.

State v. Taylor, 669 So.2d 364, 374-75 (La. 1996) (citations and quotation marks omitted). Here, petitioner obviously could not show that the prosecutor's comments rose to the level of reversible error. For the most part, the comments were fairly innocuous and within the range of acceptable

argument. Moreover, the jurors were specifically instructed that they "must consider only the evidence which was admitted during the trial"[31] and that "[s]tatements and arguments made by the attorneys are not evidence."[32] Lastly, the evidence against petitioner was damning. The victim personally knew petitioner and positively identified him as the perpetrator of this crime. It was that compelling evidence, not these comments, which resulted in the guilty verdict. In light of all of these considerations, it cannot fairly be said that the comments contributed to the verdict. Therefore, this claim must should be rejected because there is no reasonably probability that petitioner would have prevailed on appeal *even if* the claim had been asserted *and* the procedural default had been disregarded.

## <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Marcus Williams be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[31] State Rec., Vol. III of III, transcript of June 20, 2006, p. 82.

[32] State Rec., Vol. III of III, transcript of June 20, 2006, p. 84.

a failure to object.  28 U.S.C. § 636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415,

1430 (5th Cir. 1996) (en banc).[33]

      New Orleans, Louisiana, this sixth day of August, 2012.

                                  **SALLY SHUSHAN**
                                  **UNITED STATES MAGISTRATE JUDGE**

---

    [33] <u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.